**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

---

JESSICA PLATERO,

        Plaintiff,

v.                                                                    No. CIV 01-1318 BB/WDS

JEFF BAUMER, DAVID SANDERS, and
WILLIAMS ENERGY SERVICES,

        Defendants.

**MEMORANDUM OPINION**

    THIS MATTER comes before the Court for consideration of a motion for summary judgment (Doc. 31) filed by Defendant Williams Energy Services, the only remaining Defendant in this case. The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the summary-judgment motion will be granted and this case dismissed.

    Plaintiff's employment with Defendant was terminated during a reduction in force ("RIF") that occurred in May and June of 2000. Following the RIF, Plaintiff exhausted her administrative remedies and then filed this lawsuit. Plaintiff has raised Title VII claims of race, gender, and age-based discrimination; a claim of violation of her seniority rights, which may be a breach of contract claim; and an additional claim of discrimination on the basis of race or ethnicity. Defendant has moved for summary judgment on all claims.

    "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting

Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Factual Summary**

The facts, viewed in the light most favorable to Plaintiff, are as follows. Plaintiff was employed by Defendant's predecessors for approximately fourteen years. After Defendant purchased the business and became Plaintiff's employer, Plaintiff remained employed by Defendant for almost five more years. At the time the RIF occurred, Plaintiff held the position of field office administrator. She was fifty-one years old and an enrolled member of the Navajo Nation. After the RIF Defendant retained three field office administrators: a forty-four-year-old Hispanic woman, a twenty-eight-year-old Native American woman, and a forty-six-year-old Anglo woman. (Exh. E, MSJ, answer to question 11). Defendant informed the E.E.O.C., during the administrative investigation of Plaintiff's discrimination charge, that these three women were retained because they scored higher than Plaintiff in the "Right Way Right Results" ("RWRR") process. (same). The RWRR process was the procedure employed by Defendant to determine who would lose their jobs as a result of the RIF and who would be retained.

**Discussion**

Plaintiff did not submit any direct evidence of discrimination on the basis of age, race, or gender. Therefore, the summary-judgment analysis requires application of the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000) (applying *McDonnell Douglas* test to RIF situation involving claim of age discrimination); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1167 n. 4 (10th Cir. 1998) (noting that same analysis applies to discrimination claims based on age, gender, and race). Under the *McDonnell Douglas* framework in a RIF context, a plaintiff is first required to make a prima facie showing that discrimination was the reason she was selected for layoff. If the plaintiff succeeds in doing so, the burden shifts to the employer to provide a facially nondiscriminatory reason for the layoff. Once the employer provides such a reason, the burden shifts again to the plaintiff, to provide evidence indicating the employer's proffered neutral reason was actually a pretext for discrimination. *See generally Stone; Beaird*.

**Prima Facie Case:** Defendant argues first that Plaintiff has not established the necessary prima facie case of discrimination. To do so, it was incumbent on Plaintiff to submit evidence showing the following: (1) she is a member of a protected group; (2) she was doing satisfactory work at the time of the RIF; (3) she was laid off despite the adequacy of her work; and (4) there is some evidence Defendant intended to discriminate against Plaintiff in making the RIF decision. *Stone*, 210 F.3d at 1137. Defendant assumes for purposes of the summary-judgment motion that Plaintiff has satisfied the first three requirements.[1] Defendant maintains, however, that Plaintiff has failed to

---

[1] Defendant's assumption is well-founded; Plaintiff presented evidence that she is female, Native American, and over forty years of age, and her annual personnel evaluations showed she met or exceeded the requirements of her position in every area evaluated. Thus, she established that she is a member of three protected groups, was doing satisfactory work, and was laid off.

3

introduce any evidence tending to show that discrimination was the basis of Defendant's selection of Plaintiff to be subjected to the RIF.

Defendant points out that in her deposition, Plaintiff stated she thought she should be retained because she is Native American. This mistaken view of the law, according to Defendant, is not sufficient to meet the fourth requirement of the prima-facie-showing test. Plaintiff's view of the law and of her rights, however, is irrelevant to the inquiry at hand. What matters is whether Plaintiff has submitted, or can point to, evidence sufficient to satisfy the test, whether she had a mistaken view of her rights or not. According to the Tenth Circuit, in a RIF case the fourth aspect of the prima-facie-showing test may be met merely by showing that the employer retained other employees, in the same or similar positions, who were not members of the relevant protected group. *Stone*, 210 F.3d at 1138. Put more simply, all Plaintiff had to do in this case was show that Defendant retained, in the position of field office administrator,[2] a man, a non-Native American, and a "not insignificantly younger" employee, rather than retaining her. *Id.*; *Beaird*, 145 F.3d at 1167, n. 4 (pointing out that "younger" for purposes of prima facie showing actually means "not insignificantly younger").

---

[2]The position of field office administrator is the only relevant position in this case, because Plaintiff made no attempt to show that other positions in Defendant's organization were similar to the position she held. *Compare Stone*, 210 F.3d at 1138-39 (discussing the plaintiff's efforts to demonstrate that other positions in which younger employees were retained were similar to his position). Although Plaintiff has made general assertions that Defendant retained younger employees, or hired younger employees following the RIF, or that the RIF was aimed primarily at Navajo employees, these assertions have no legal merit. (Exh. A, MSJ, Pltf. dep. pp. 140-42; Complaint, par. 17). Some of them were admittedly based on hearsay, and Plaintiff provided no facts or evidence to support any of them. In addition, as discussed in *Stone*, it was Plaintiff's burden to demonstrate how she was treated in comparison to employees in the same or similar positions, rather than making organization-wide comparisons.

It is immediately apparent that Plaintiff has not made a prima facie showing with respect to her claim of gender discrimination. No men were retained as field office administrators, so Plaintiff cannot point to a man who was retained in the same or similar position.[3] As to Plaintiff's age discrimination claim, there was evidence that all three retained employees were younger than Plaintiff, and one was significantly younger than age forty. Similarly, two of the three retained field office administrators were not Native Americans. Therefore, Plaintiff has met the prima-facie-showing requirement as to her claims of race and age, but not gender, discrimination.

**Facially Neutral Explanation:** As noted above, the next step in the *McDonnell Douglas* process is to determine whether Defendant has offered a facially neutral explanation for choosing to subject Plaintiff to the RIF rather than the retained employees. The Tenth Circuit has held that the mere fact that a termination occurred pursuant to a RIF, rather than as a result of other circumstances, is sufficient to satisfy the employer's obligation to provide a nondiscriminatory explanation for its actions. *Stone*, 210 F.3d at 1140; *Beaird*, 145 F.3d at 1168. In addition to the RIF itself, Defendant points to the asserted fact that Plaintiff scored lower than the three retained field office administrators as the facially nondiscriminatory reason for selecting Plaintiff, rather than one of the other three, to be laid off. Defendant has therefore met its burden under the *McDonnell Douglas* test.

**Pretext:** The final step is to determine whether Plaintiff has introduced any evidence tending to show that Defendant's facially nondiscriminatory explanation is actually a pretext for discrimination. According to the Tenth Circuit, in the RIF context there are three common methods

---

[3]It should also be noted that Plaintiff made no effort to show that the RIF was not a company-wide RIF. In other words, she did not present any evidence that positions such as field office administrator, which might have been filled mainly or exclusively by women, were singled out for the RIF, while male-dominated positions were not subjected to layoffs. If such a showing had been made, the results of the prima facie showing analysis might have been different.

of demonstrating pretext: (1) evidence that the termination of the employee was not consistent with the employer's established RIF criteria; (2) evidence that the employer's evaluation of the employee was falsified to cause the termination; and (3) evidence that the RIF in general was a pretext for discrimination. *Stone*, 210 F.3d at 1140. These three methods are not exclusive, but Tenth Circuit law demonstrates most attempts to show pretext in a RIF case will fall into one of these three categories. *Beaird*, 145 F.3d at 1168, n. 6.

In this case, Plaintiff has submitted no admissible evidence that might fit the first method of showing pretext. The RIF criteria used by Defendant were found in the RWRR procedure mentioned above. Under that procedure, employees were evaluated prior to the RIF and then given a score. The evidence submitted to the Court shows that Plaintiff's score was lower than the scores of the other field office administrators who were retained following the RIF.[4] Plaintiff has submitted no evidence indicating that this is not true. Furthermore, Plaintiff has submitted no evidence indicating that Defendant failed to apply the RWRR criteria in assessing her and the other employees.

Plaintiff does, however, vigorously attack the validity of the RWRR evaluation she received, and impliedly suggests that either her RWRR score was wrongly downgraded or the scores of some

---

[4] For purposes of this opinion, the Court is using the three field office administrators named by Defendant as the ones who were retained. The Court notes Plaintiff's assertion in her affidavit, filed in response to the motion for summary judgment, that there were eleven field office administrators in the Four Corners/Torre Alta districts at the time of the RIF. This assertion does not change the Court's analysis, for several reasons. First, Plaintiff has not indicated the basis of her knowledge of the number of field office administrators in the two districts. Second, Plaintiff has provided no information as to how many of those individuals were retained following the RIF. Third, the discussion of this issue applies to any of those individuals who were retained, so it does not matter whether three or more individuals were retained. In sum, the only admissible evidence is that the field office administrators retained following the RIF are the three individuals named by Defendant in the response to the E.E.O.C. investigation.

retained field office administrators were inflated.[5] Plaintiff alleges that Jeff Baumer performed the RWRR assessment that led to her layoff, and the Court will accept that assertion as true for summary judgment purposes.[6] Mr. Baumer gave Plaintiff a low score on the RWRR assessment, based on his assertions that Plaintiff was not a team player, was protective of her duties, was resistant to change, did not go out of her way to help other employees, lacked computer skills, had a "not my job" attitude, and viewed herself as a personal secretary for "Sanders." (Exh. D, MSJ – evaluation by unidentified individual, whom Plaintiff claims was Mr. Baumer).

Plaintiff's first attack on the RWRR assessment is that Mr. Baumer provided no facts to back up his subjective statements concerning Plaintiff's traits as an employee. The fact that a RIF is based on subjective opinions rather than facts, however, does not raise an inference of discrimination or pretext. *See Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 978 (10th Cir. 1996). An employer's decision to lay off one employee rather than others will not be second-guessed, absent some evidence of improper motives. *Id.* Neither Title VII nor any other employment-discrimination statute is violated by an erroneous or even illogical business judgment. *Id.* In sum, even if Mr. Baumer's opinion of Plaintiff's merit as an employee was completely wrong, he was entitled to rely on that

---

[5]Plaintiff does this by asserting, in her affidavit, that the other field office administrators lacked her qualifications, professionalism and service that she exemplified during her many years of employment; that the forty-six-year-old Anglo administrator was less experienced than she was; and that she knows "for a fact" that this administrator does not have the education and experience that she has. The only logical conclusion to be drawn from these assertions, in the RIF context, is that she should have received a higher score during the RWRR process than did the other administrators. It should be noted that, unless otherwise indicated, all references to Plaintiff's assertions in the following section are to statements made in Plaintiff's affidavit. (Exh. 1 to Resp. to MSJ).

[6]In the affidavit Baumer submitted to the E.E.O.C., he denied being personally involved in the RWRR evaluation process. (Exh. F, MSJ). However, for purposes of summary judgment, the Court must view the facts in the light most favorable to Plaintiff. Although Plaintiff does not explain how she knows that Baumer performed the assessment about which she complains, the Court will assume that as the subject of the assessment she has the requisite knowledge.

7

opinion in making the RIF decision, unless his opinion was based on some type of discriminatory motive.

Plaintiff attempts to supply evidence of a discriminatory motive by providing her opinion that Mr. Baumer's assessment of her as not being a team player, as well as his other views of her shortcomings as an employee, were based on racial stereotypes such as the "sullen Indian" stereotype. The problem with Plaintiff's statements is that they are pure speculation, unsupported by any evidence of any kind. Plaintiff did not depose Mr. Baumer to find out if he might indeed harbor any racial stereotypes such as the one she has mentioned. Nothing in the record indicates why Mr. Baumer decided Plaintiff is not a team player, or resistant to change, or protective of her duties. Plaintiff's own assumptions as to Mr. Baumer's racial prejudices, unsupported by any facts, are not sufficient to raise an inference of discrimination or pretext. *See, e.g., Stone*, 210 F.3d at 1141 (plaintiff failed to raise issue of fact on pretext issue, in part because plaintiff failed to uncover, through cross-examination, any contradictory statements by company officials that might cast doubt on their facially neutral explanation).

Plaintiff also attacks the RWRR process by stating that Defendant retained Caucasian field office administrators who lacked her qualifications, professionalism, and experience. Specifically, she states that she knows "for a fact" that the forty-six-year-old Anglo woman retained by Defendant "does not have the education and experience I have." Plaintiff does not explain the basis of her knowledge of the other individuals' qualifications. Her unsupported opinion that her qualifications were superior to those of the retained employees is not admissible in evidence, and will not be considered on summary judgment. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (under Rule 56, evidence offered in opposition to a motion for summary judgment must be made on personal knowledge, set forth facts that would be admissible in evidence, and show

8

affirmatively that the person providing the evidence is competent to testify as to the matters set forth in the evidence). Her mere assertion, that she "knows for a fact" that her education and experience exceed those of another employee, does not raise an issue of fact as to whether this assertion is true or not. In other words, Plaintiff has not met her burden of submitting evidence that might raise an issue of fact as to whether her objective qualifications truly were superior to the qualifications of the retained field office administrators. Similarly, she has failed to raise an issue of fact as to whether the retained employees' RWRR ratings were artificially inflated to be higher than her rating.

Plaintiff relies heavily on her prior annual performance evaluations, which she characterizes as showing she was an "above average" employee.[7] Plaintiff uses these evaluations to attack the validity of the RWRR assessment. Her argument essentially is that since her annual evaluations were positive, the largely negative RWRR assessment did not accurately reflect her abilities and qualifications as an employee, and was therefore pretextual. The main difficulty with Plaintiff's argument, however, is the fact that the annual evaluations were all performed by one supervisor, Mr. Sanders, while the RWRR assessment was performed by a different individual, Mr. Baumer. The fact that one supervisor views an employee's performance differently than another, without more, does not raise an inference of pretext or discrimination. *See, e.g., Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 20 (1st Cir. 1999) (two previous positive evaluations, from different supervisor,

---

[7]Defendant, on the other hand, characterizes her evaluations as "mediocre." Neither party, however, has provided any standard or point of reference the Court may use to decide which characterization is correct. For example, no information has been submitted to indicate whether Plaintiff's scores on her evaluations, in the aggregate, were higher or lower than the average score of the other field office administrators. The only basis of comparison offered by either party is one annual evaluation of the forty-six-year-old Anglo administrator who was retained by Defendant. That evaluation produced higher scores for the other administrator than Plaintiff received in that year, or in any other year for that matter. This is not sufficient information, however, upon which to make a decision as to whether Plaintiff's annual evaluations were mediocre or above average.

9

did not raise inference that subsequent poor evaluation from different supervisor was pretextual); *Orisek v. American Inst. of Aeronautics and Astronautics*, 938 F.Supp. 185, 190-91 (S.D.N.Y. 1996) (employee received first adverse performance review in seventeen years, prior to RIF; since employee had changed departments and managers prior to adverse review, inconsistency in evaluations was not evidence of pretext). Since Mr. Baumer was performing the assessment upon which the RIF decision would be based, it is his evaluation as decision-maker, not the other supervisor's, that is relevant in this case. *Cf. Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) ( age-related comments by non-decision-makers are not material in showing that employer's action was based on age discrimination). Plaintiff did not present any evidence to show that Mr. Baumer was even aware of her prior annual evaluations; did not present any evidence as to his ostensible reasons for his negative RWRR assessment; did not ask Mr. Baumer to explain why his assessment might have been inconsistent with the annual evaluations; did not inquire as to the sources of information Mr. Baumer used, if any, in arriving at his assessment; and did not ask Mr. Baumer to explain what he was specifically referring to in any of his negative comments.[8] Absent any such information, it is not permissible to infer that Mr. Baumer falsified Plaintiff's RWRR assessment in order to give her a lower score than she should have received. In sum, to raise an issue of fact about pretext it is not sufficient to simply point out that one supervisor's subjective opinion of an employee's performance is different than the subjective opinion of the decision-maker, or to challenge in general terms the performance evaluation upon which the RIF decision was based. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991) (merely challenging in general terms an evaluation relied on by

---

[8]As just one example, the Court notes that Mr. Baumer stated in the RWRR assessment that Plaintiff is " Not approachable by operations--externally or others, provides little operations support." The Court has been given no information as to what "operations" refers to, or what Mr. Baumer was talking about when he made this statement. It is therefore impossible to compare the statement to any portion of the annual evaluations that might be referring to the same subject.

an employer during a RIF is insufficient to allow an inference of discrimination). The employee must instead present some specific evidence tending to show that the inconsistencies or the decision-maker's evaluation are not based on any facts known to the decision-maker.[9] Since Plaintiff has not presented such evidence in this case, she has failed to raise an issue of fact as to whether her RWRR assessment was deliberately falsified.

Plaintiff's affidavit does not attempt to demonstrate that the RWRR process was in general a pretext for discrimination. She does appear to complain that the process did not incorporate Navajo cultural values; however, such incorporation is not required by federal law, and the lack of such incorporation does not show pretext. Also, in Plaintiff's complaint she asserted that the RIF targeted Navajos disproportionately, which might be an indication the RWRR process was actually a pretext to allow Defendant to lay off Navajo employees. Plaintiff has not, however, provided any evidence to support her assertion. The Court therefore finds there is no evidence the RIF or the RWRR process used to carry out the RIF was in general a pretext for discrimination.

**Other Claims Raised in Complaint**

Plaintiff has not presented any argument or evidence in support of her seniority-based claim, which might be considered a breach-of-contract claim. Therefore, she has abandoned that claim. Furthermore, the third cause of action in the complaint, a repetitive claim of race discrimination, is subject to the same analysis applied above. For the reasons stated above, that claim also fails to survive summary judgment.

---

[9]To do this, it is not sufficient to do as Plaintiff has done in this case, by pointing to her own unsupported opinion that Mr. Baumer's assessment was based on racial stereotypes, or her similarly unsupported opinion that she was more qualified than the retained employees, or her general assertion that she was an above-average employee. Plaintiff was instead required to present some evidence undercutting the specific assertions made by Mr. Baumer in his assessment.

11

**Conclusion**

In a RIF situation, qualified employees are laid off due to the employer's business judgment. To raise an issue of fact as to whether she was selected for the RIF as a result of discrimination, rather than a true exercise of business judgment, Plaintiff was required to present evidence tending to show either: (1) she in fact scored higher than the retained field office administrators; or (2) she should have scored higher than at least one of them. Plaintiff has attempted to meet her burden largely by relying on her own factually unsupported opinions concerning her qualifications, the decision-maker's biases, and the retained administrators' qualifications. These unsupported opinions, as discussed above, are an insufficient basis upon which to resist summary judgment. For this reason, and for the reasons discussed above, the motion for summary judgment will be granted and this case will be dismissed.

Dated this 9th day of July, 2003.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Dennis W. Montoya

**For Defendant**:
Charles J. Vigil